IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

ARMANDO RUBIO,

          Plaintiff,

v.                                    CASE NO.: _____

ALGO CAPITAL, LLC, a
Florida corporation, and
K SUNSET CONSULTING INC.,
a Florida corporation,
KAITO GROUP, LLC,
a Wyoming limited liability corporation,          **JURY TRIAL DEMAND**
ROBERT D COLLAZO, JR,
JUAN HERMAN, and
JULIO CESAR CRUZ, and
JULIAN CRUZ,
all in their individual capacity.

          Defendants.

_____/

## PLAINTIFF'S ORIGINAL RCO COMPLAINT
### (*RICO Action*)
(*Federal Racketeering Influence & Corrupt Organization Act; 18 U.S.C. § 1961 et seq.*)
(*Fraud in the Inducement*)
(*Common Law Fraud*)
(*Breach of Contract*)
(*Unjust Enrichment*)

## TABLE OF CONTENTS

Preamble……………………………………………………………………………………p.3

Jurisdiction and Venue…………………………………………………………………..p.3

Nature of Action and Relief Sought……………………………………………………..p.3

Parties……………………………………………………………………………………p.4

General Allegations……………………………………………………………………… p.6

Count I.        Federal Civil RICO § 1962(c))…………………………………………... p.17
        Racketeering Act I      (Mail/Wire Fraud)………………………………………....p.18
        Racketeering Act II     (Title 18 U.S.C. § 1957 & 2)……………………………… p.20
        Racketeering Act III    (Title 18 U.S.C. § 1956 & 2…………………………………  p.22


Count II.       Federal Civil RICO Conspiracy – 1962(d) & 1964……………………….. p.24
        Racketeering Act I      (Mail/Wire Fraud)………………………………………....p.26
        Racketeering Act II     (Title 18 U.S.C. § 1957 & 2)……………………………… p.28
        Racketeering Act III    (Title 18 U.S.C. § 1956 & 2…………………………………  p.30

Count III.  Fraud in the Inducement……………………………………………………  p.32

Count IV. Common Law Fraud………………………………………………………  p.34

Count V. Breach of Contract……..……………………………………………………  p.35

Count VI. Unjust Enrichment ……………………………………………………  p.36

Prayer ……………………………………………..…………………………………..p.36

Request for Jury……………………………………………………………………..p.37

Verification……………………………………………………………………………..p.38

## PREAMBLE

COMES NOW, the Plaintiff, ARMANDO RUBIO ("Plaintiff") in the above-entitled

numbered cause who files this, his Original Civil RICO Complaint ("complaint") against the

Defendants ALGO CAPITAL, LLC, a corporate entity, and ROBERT D. COLLAZO, JR,

JULIO CESAR CRUZ, JUAN HERMAN all in their individual capacities, (hereinafter referred

to collectively as "Defendants"), stating claims as follows:

## I.  JURISDICTION AND VENUE

1.      This action arises under the federal Racketeering Influence & Corrupt

Organization Act, Title 18 U.C.S. §1961 et seq., (hereinafter referred to as "RICO"), and claims

of violations of Florida law committed by Defendants.

2.      The jurisdiction of this Court is invoked in accordance with the provisions of Title

28 U.S.C. §§ 1331, 1332 and 1367.

3.      Venue is prescribed by the General Venue Statute, 28 U.S.C. § 1391, and it

properly lies in the United States District Court for the District of Southern District of Florida –

Miami Division, where each claim arose in its entirety.

## II.  NATURE OF ACTION AND RELIEF SOUGHT

4.      Plaintiff seeks treble damages under RICO, the return of Plaintiff's property and

money in Defendants' possession and/or control, and the proceeds flowing from the use

Plaintiff's property. Plaintiff seeks full compensation for the fraudulent transfer and theft of

Plaintiff's property, the sum of which is in excess of $670,000.00; the imposition of a

constructive trust as to all monies in the possession of Defendants, their nominees, agents,

attorneys, representatives, trusts, which are or could be subject to this lawsuit; and other damages

against all named Defendants in an amount which Plaintiff is entitled to as a matter of law and

equity. The fraudulent scheme described above executed by ALGO CAPITAL, COLLAZO,

HERMAN, CRUZ generating hundreds of thousands of dollars from Plaintiff and millions of dollars from other similarly situated victims.

5.    Additionally, Plaintiff seeks equitable relief from this Court by means of an injunctive order enjoining the Defendants from moving, dissipating, spending, transferring, assigning, using as collateral or further concealing the origins of the proceeds generated from their fraudulent scheme targeting Plaintiff in its property as more fully detailed below. Plaintiff also seeks such injunctive orders as may be required to safeguard Plaintiff's property and/or recovering of its property during the pendency of this action. Plaintiff also seeks such injunctive orders to enjoin Defendants from future unlawful acts which could be construed or deemed in derogation of Plaintiff's rights and privileges under the laws and statutes and Constitution of the United States and State of Florida. In accordance with the applicable law, Plaintiff prays that the Court determine and award costs and reasonable expenses of litigation including a reasonable attorney's fees as an incident of Plaintiff's costs.

### III.  THE PARTIES

6.    The Plaintiff, ARMANDO RUBIO ("Plaintiff") is a citizen of the State of Florida and United States who lives in Miami Dade, Florida.

7.    Each of the individual Defendants named in the instant civil RICO action are being sued in their individual capacities.

8.    Defendant, ROBERT D. COLLAZO ("COLLAZO"), at all times material to this action, conducted or caused to be conducted business in the Southern District of Florida and elsewhere. Defendant was a knowing and willful participant and member of the Enterprise. He can be served with process at 12301 NW 112 Ave Suite 110 Medley, FL 33178.

9.    Defendant, JUAN HERMAN ("HERMAN"), at all times material to this action, conducted or caused to be conducted business in the Southern District of Florida and elsewhere.

Defendant was a knowing and willful participant and member of the Enterprise. He can be served with process at 12301 NW 112 Ave Suite 110 Medley, FL 33178.

10.     Defendant, JULIO CESAR CRUZ ("CRUZ"), at all times material to this action, conducted or caused to be conducted business in the Southern District of Florida and elsewhere. Defendant was a knowing and willful participant and member of the Enterprise. He can be served with process at 325 South Biscayne Blvd. Unit 4022 Miami, Florida 33131.

11.     Defendant, JULIAN CESAR CRUZ ("JULIAN"), at all times material to this action, conducted or caused to be conducted business in the Southern District of Florida and elsewhere. Defendant was a knowing and willful participant and member of the Enterprise. He can be served with process at 325 South Biscayne Blvd. Unit 4022 Miami, Florida 33131.

12.     Defendant, ALGO CAPITAL, LLC ("ALGO CAPITAL"), at all times material to this action, conducted or caused to be conducted business in the Southern District of Florida and elsewhere. Defendant was a knowing and willful participant and member of the Enterprise. ALGO CAPITAL can be served with process by serving its registered agent Perlman, Bajandas, Yevoli & Albright, P.L. 283 Catalonia Avenue Coral Gables, FL 33134.

13.     Defendant, K SUNSET CONSULTING INC, ("K SUNSET"), a Florida corporation, at all times material to this action, conducted or caused to be conducted business in the Southern District of Florida and elsewhere. Defendant K SUNSET was a knowing and willful participant and member of the Enterprise. K SUNSET can be served with process by serving its registered agent Alex Martinez 300 Aragon Avenue Suite 210 Coral Gables, Florida 33134.

14.     Defendant, KAITO GROUP, LLC, a Wyoming limited liability corporation, ("KAITO"), at all times material to this action, conducted or caused to be conducted business in the Southern District of Florida and elsewhere. Defendant KAITO was a knowing and willful

participant and member of the Enterprise. KAITO can be served with process by serving its registered agent Cloud Peak Law, LLC 1095 Sugar View Drive Suite 500 Sheridan, WY 82801.

## IV.  GENERAL ALLEGATIONS

15.     All conditions precedent to the filing of this action has occurred, accrued, have been fulfilled or have been waived as a matter of law.

16.     On or about October 25, 2022, and pursuant to a written agreement between Plaintiff and CRUZ, Plaintiff had $670,000 worth of cryptocurrency known as Bitcoin ("BTC") in a mutually owned wallet that Julio Cruz controlled and managed. *See Exhibit 1 hereto*.

17.     In or about and between January 2022 and June 2023, Defendants ALGO CAPITAL, COLLAZO, HERMAN, CRUZ, JULIAN, K SUNSET, and KAITO (collectively referred hereinafter as "Defendants"), together with others known and unknown, conspired and acted in concert with one another and aided and abetted each other to achieve a common goal which was to defraud Plaintiff and other innocent victims of their property and money, via a scheme to defraud.

18.     During the execution of the fraudulent scheme and artifice by Defendants, Defendants used or caused to be used the mails and wires, all in violation of Title 18 U.S.C. §§ 1341, 1343 and 2. Further, in order to conceal the Plaintiff's monies which constituted the proceeds of the illegal activities of Defendants targeting Plaintiff, Defendants purchased real estate, property, vehicle(s) and/or used the money to pay bills, all in violation of Title 18 U.S.C. §§ 1956 and 1957 and 2. The Defendants aforenamed, together with the others unknown, by their association in fact and agreements with one another to achieve the aforementioned common goals to defraud Plaintiff, constituted the "Enterprise" as that term is defined under Title 18 U.S.C. § 1964(4). The Defendants, individually and jointly conducted and managed, directly or indirectly in the affairs of the Enterprise as well as participated, directly or indirectly in the affairs of the Enterprise through a pattern of racketeering activities within the meaning of Title

6

18 U.S.C. §§ 1961(1)(A), (B), (D) and (E), 1961(5) and 1962(c) & (d), to-wit: multiple instances of mail and wire fraud, in violation of 18 U.S.C. § 1341, 1343 and 2; Multiple instances of money laundering in violation of Title 18 U.S.C. §§ 1956 and 1957; Multiple instances of theft, fraud, common fraud, felony theft in violation of Florida criminal statutes.

19.     At all times relevant to this action, Plaintiff was an individual seeking to invest into the algorithm trading platform of ALGO CAPITAL.

20.     At all times relevant to this action, COLLAZO was the president of ALGO CAPITAL.

21.     At all times relevant to this action, HERMAN was the vice president of ALGO CAPITAL.

22.     At all times relevant to this action, CRUZ was an agent or representative for COLLAZO and/or ALGO CAPITAL.

23.     At all times relevant to this action ALGO CAPITAL was/is company whose headquarters was/is located in Medley, Florida. ALGO CAPITAL touted itself as having proprietary algorithmic trading program with a primary target of continuous growth of the initial account through a proprietary intraday strategy managed by ALGO CAPITAL and its officers COLLAZO and HERMAN.

**THE FRAUDULENT SCHEME AND OVERALL GOAL OF THE CRIMINAL ENTERPRISE.**

24.     Prior to and after January 2022, the Defendants ALGO CAPITAL, COLLAZO, HERMAN, CRUZ, JULIAN, K SUNSET, and KAITO, together with others unknown embarked on a fraudulent scheme over an extended period of time to defraud Plaintiff and other victims similarly situated of their money by marketing a Algorithmic trading platform to Plaintiff and others personally -- Algorithmic trading platform which was non-existent and fictitious.

## CRUZ'S CAREER AS A SOPHISCATED CRIMINAL

25.     On May 23, 1995, Defendant CRUZ was convicted of federal drug trafficking crimes and sentenced to a term of 136-months imprisonment and a 5-year period of supervised release. *See*, *United States v, Julio Cesar Cruz*, No. 94-cr-00351-08 (N.D. Georgia).  He began his period of supervised release on April 6, 2001 in the Southern District of Florida.

26.     On July 21, 2003, the U.S. Probation Officer filed a superseding petition for offender under supervision, citing numerous incidents of criminal activity establishing violations of CRUZ's terms of probation. *See*, *United States v. Julio Cesar Cruz*, No. 01-102-TP-Ungaro-Benages (S.D. Fla.) at ECF 14. The criminal conduct engaged in by CRUZ were the following:

      (**1**) unlawfully obtained a Florida Driver's License under the name of Ricardo Garcia, Date of Birth (DOB) 7/22/65, in violation of Florida Statutes 322.212;

      (**2**) possession a fraudulent United States Passport, No. 043667569, under the name of Ricardo Garcia, in violation of 18 U.S.C. §§ 1028, 1543, 911 and 1001, a Class C felony; and

      (**3**) filing false personal financial reports with the government.

27.     On October 23, 2006, CRUZ was convicted of Conspiracy to Sell Counterfeit and Illegally Imported Drugs, violation of 18 U.S.C. 371 and Sale of Counterfeit Drugs, violation of 21 U.S.C. §§ 331(i)(3) and 333(a)(2). *See, United States v. Julio Cesar Cruz*, No. 05-cr-00021-ODS (W.D. Missouri - Western Division) at ECF 11, and sentenced to a term of imprisonment, a period of supervised release and $2 million in restitution which was paid by CRUZ prior to the time of sentencing as a condition of the plea agreement.

28.     In or about and between 2021 and 2022, CRUZ raised money from the illegal sale of Sale of Counterfeit Drugs for the purpose of funding the account with ALGO

CAPITAL in order to show the victims targeted by Defendants the wealth Defendants had generated with a new unique and proprietary and sophisticated algorithmic trading platform.

29.     Defendants claimed they developed a unique and highly sophisticated algorithmic trading platform software to dynamically identify profitable opportunities and place the trades in order to generate profits at precision, efficiency and frequency that is impossible to match by a human trader; "maybe a losing trade but never a losing day" the Defendants proclaimed.

30.     Defendants presented to Plaintiff and others similarly situated reports of the activities of the algorithmic trading platform software which included profits generated by this algorithmic trading platform software. The defendants claimed that their liquidity provider was B2B brokers, when the real liquidity provider was Traders Domain and CRUZ.

31.     Defendants made several presentations to Plaintiff to induce Plaintiff to invest Plaintiff's money and cryptocurrency with ALGO CAPITAL.

**ALGO CAPITAL, COLLAZO, HERMAN, CRUZ USE ALGO CAPITAL TO SET THE BAIT FOR PLAINTIFF TO MAKE FIRST PURCHASE OF ALGO CAPITAL TRADING ACCOUNTS**

32.     In January 2022. CRUZ and continuing through August 2022, sent numerous screen images of purported trading and profit statements and account statements on the trading app hub called "Meta trader 5" it is the host platform for the forex trading and trading platforms to input and operate. Julio Cesar Cruz showed enormous gains from the algorithm trading platform called "Algo Capital", from his cell phone to Plaintiff. The purpose of CRUZ showing these documents to Plaintiff was to induce Plaintiff to invest in ALGO CAPITAL's unique algorithmic software and programming.

33.     In or about March 2022, CRUZ took Plaintiff to the corporate office of ALGO CAPITAL located in Doral, Florida where Plaintiff met COLLAZO and his team, John Fortini, HERMAN and JULIAN. COLLAZO illustrated a notion of legitimacy by showing Plaintiff an

array of mining containers with employees attaching computers to the containers to mine cryptocurrency; this was regarding the Defendant COLLAZO's other company, Bit5ive. Plaintiff was overwhelmed with what appeared to be a massive operation of mining cryptocurrency by ALGO CAPITAL and its employees. COLLAZO, JULIAN and HERMAN explained to Plaintiff the operations of ALGO CAPITAL, its growth and enormous revenue generated to account holders of ALGO CAPITAL.

34.     At this meeting, CRUZ showed Plaintiff account statements and documentation which reflected enormous profits in his (CRUZ) trading accounts with ALGO CAPITAL. The plaintiff asked who was their liquidity provider. Defendants stated it was B2B brokers; one of the most reputable liquidity providers in the industry. CRUZ told Plaintiff it was COLLAZO and HERMAN operating ALGO CAPITAL's sophisticated proprietary algorithm that is able to identify and execute profitable trades within the forex trading industry; trading pairs. Unbeknownst to Plaintiff at this time, the account statements and documentations presented by CRUZ, COLLAZO and HERMAN were false and fraudulent.

35.     Thereafter, CRUZ kept sending Plaintiff numerous screen images of the statements and activities of his account at ALGO CAPITAL. CRUZ explained with each message to Plaintiff that the monies made were a direct result of ALGO CAPITAL's algorithmic software and program.

36.     In or about July, 2022, CRUZ invited Plaintiff to a VIP event by ALGO CAPITAL at Brickell City Centre Hotel private party  in Miami, Florida, where COLLAZO and HERMAN would present and further explain to a crowd of current and future investors about ALGO CAPITAL's unique algorithm software and its application and operation using ALGO CAPITAL's  proprietary trading robot to mitigate market volatility, market risk  and generate revenue north of 20% a year in comparison to what the benchmark S&P 500.  Unbeknownst to Plaintiff at this time, this event by ALGO CAPITAL, CRUZ, COLLAZO and HERMAN was a

scheme to induce Plaintiff and others similarly situated to transfer their monies and cryptocurrency to designated account under the control and possession of Defendants where Defendants then used the cryptocurrency for their own benefit and use.

37.     After the event, CRUZ told Plaintiff to just start small by transferring to ALGO CAPITAL a small amount of money to invest with ALGO CAPITAL. CRUZ told Plaintiff that Plaintiff could just purchase $100,000.00 of CRUZ's trading account with ALGO CAPITAL and maintain the investment in CRUZ's account and watch the returns of profits in said account.

38.     In August 9, 2022, after CRUZ, COLLAZO and HERMAN convinced Plaintiff that ALGO CAPITAL's algorithmic Software and program generated enormous returns, Plaintiff agreed to wire $100,000.00 to Kaito group account for the benefit of and deposit into CRUZ's company, Kaito group LLC.

39.     On the same day, Plaintiff requested confirmation of receipt and investment of Plaintiff's $100,000. ALGO CAPITAL emailed Plaintiff a confirmation and acknowledgment of the $100,000.00 sent from Plaintiff to CRUZ's company, KAITO GROUP LLC.

40.     In or about October 1, 2022, Plaintiff submitted a (text) written request to withdraw the $100,000.00 to ALGO CAPITAL, via cell phone to its representative CRUZ. Plaintiff was told by CRUZ the withdrawal will take a few days but it will be sent in different amounts over a short period of time. Plaintiff made this withdrawal in order to confirm that ALGO CAPITAL did what it said it was going to do and did not have a liquidity problem.

41.     On or about October 5, 2022, Plaintiff received from CRUZ a wire transfer of $80,000.00 into his bank account from CRUZ's company KAITO GROUP LLC.

42.     On or about October 7, 2022, Plaintiff received from CRUZ a wire transfer of $20,000.00 into his bank account from CRUZ's company K SUNSET CONSULTING INC.

43.     On or about October 14, 2022, Plaintiff received from CRUZ a wire transfer of $20,000.00 into his bank account from CRUZ's company KAITO GROUP LLC.

44.     On or about October 21, 2022, Plaintiff received from CRUZ a wire transfer of $12,000.00 into his bank account from CRUZ's company KAITO GROUP LLC.  Upon receiving this last wire transfer, Plaintiff believed that ALGO CAPITAL, CRUZ, COLLAZO and HERMAN were bonifide and legitimate business entity and individuals.

45.     After wiring Plaintiff, the $132,000.00, Cruz asked Plaintiff to give him (Cruz) all monies above the 5% profits generated using Plaintiff's $100,000.00. CRUZ told Plaintiff that he (CRUZ) is entitled to those monies ($27,000.00) because he introduced Plaintiff to the holy grail of trading, i.e., Algo Capital's algorithm trading platform. CRUZ asked Plaintiff for the $27,000 in cash. Plaintiff withdrew $27,000.00 from his checking account and gave CRUZ the $27,000 in cash.

## ALGO CAPITAL, COLLAZO, CRUZ USE ALGO CAPITAL TO INDUCE PLAINTIFF TO MAKE SECOND PURCHASE VIA CRYPTOCURRENCY

46.     CRUZ then told Plaintiff it was time for Plaintiff to get serious and put in a large amount of money. CRUZ offered Plaintiff to just buy into his (CRUZ) account at ALGO CAPITAL by being a co-owner of CRUZ's trading account at ALGO CAPITAL. CRUZ represented and produced account statements purportedly issued by ALGO CAPITAL showing that the value of CRUZ's cryptocurrency account with ALGO CAPITAL was in excess of approximately $2,000,000.

47.     On or about October 25, 2022, CRUZ presented to Plaintiff trading statements and account statements of CRUZ's account 6180616 at ALGO CAPITAL reflecting that CRUZ had over $2 million in his account with ALGO CAPITAL. CRUZ told Plaintiff that he (Plaintiff) could buy into his (CRUZ) account at ALGO CAPITAL by tendering $670,000.00 either in US Dollars or bitcoin.

48.     Plaintiff transferred his ownership of $670,000.00 in the block chain wallet to CRUZ and in return CRUZ transferred his ownership of $670,000.00 in the Algo Trading account. The agreement between the Plaintiff and CRUZ is attached hereto and marked Exhibit 1.

49.     Defendant CRUZ and KAITO entered into an written agreement with Plaintiff wherein Defendants agreed to accept the asset swap of Plaintiff's money in the amount of $670,000.00 in BTC held and controlled in Julio Cruz crypto wallet for the trading account held by ALGO CAPITAL (account no. 6180616). Further, plaintiff reinvested into the platform the same way he invested the first time; via Julio Cruz, considering an investment directly with algo was never permitted; as Julio Cruz was the feeder fund.

50.     Based on the representations and documentation provided by CRUZ, This was with the above claims, representations and statements made by CRUZ, COLLAZO and HERMAN. The methodology of investing into CRUZ's account and having fractional ownership was originally offered by MR. CRUZ to the plaintiff back in August 8th, 2022 via the beneficiary agreement sent by text message, by MR CRUZ.

51.     In October, 2022, Plaintiff transferred the ownership of $670,000.00 in bitcoin to CRUZ with. Plaintiff has reinvested monies into an algo trading the same way plaintiff invested the first time, via Julio Cruz as the feeder fund, this time owning CRUZ's account 6180616 at ALGO CAPITAL.

52.     However, unbeknownst to Plaintiff, CRUZ, COLLAZO and HERMAN had other victims sending money into CRUZ's account for the purpose of co-owning the same account 6180616 and amount of cryptocurrency that Plaintiff owned.

53.     For example, during this period of time, victim Kenny Winn was approached by CRUZ and received the same presentation of ALGO CAPITAL's proprietary algorithmic

software program, and fraudulent account statement and activities from CRUZ. CRUZ

convinced Mr. Winn to give CRUZ in excess of $600,000.00 for the purchase for co-ownership

of CRUZ's account 6180616 at ALGO CAPITAL.

54.     For example, in November, 2022, victim Jose Pepe Fernandez was approached by

COLLAZO and ALGO CAPITAL feeder fund to provide Mr. Fernendez with access to ALGO

CAPITAL's proprietary algorithmic software program.

55.     Both above victims, similar to the plaintiff, could not invest directly with ALGO

CAPITA. Rather, ALGO CAPITAL directed the victims to place their money via a feeder fund.

56.     The purpose of these feeders, such as Julio Cruz's corporate account "KAITO

GROUP LLC & K SUNSET CONSULTING INC. " was for the purpose of allowing the use of

the victims' money by CRUZ, COLLAZO, HERMAN and ALGO CAPITAL to pay

commissions themselves, like CRUZ'S entities for bringing in new victims into the fraudulent

scheme. Each and every victim would be given the above presentation prepared and instructed to

give by COLLAZO, HERMAN and ALGO CAPITAL, which included but not limited to ALGO

CAPITAL's "Algorithmic FX investment strategy" yielding significant returns for account

holders of ALGO CAPITAL.

57.     The fraudulent scheme executed by Defendants targeting Plaintiff and numerous

other victims was carried out through the falsification of bank statements and documents

indicating large non-existent or fictious gains or increased value in the Plaintiff's and other

victims accounts at ALGO CAPITAL.

58.     In fact, Defendants would use the money received from Plaintiff and other victims

to pay themselves and give kickbacks to individuals or brokers associated with the money from

taken Plaintiff and other victims.

**DEFENDANTS' USE OF THE WIRES AND MAILS**

59.     From   January, 2022 and continuing to February 10, 2023, CRUZ sent Plaintiff the following text messages:

60.     From   January, 2022 and continuing to February 10, 2023, CRUZ sent Plaintiff the following emails messages:

61.     On August 9, 2022, Defendants caused Plaintiff to use the wires to send $100,000 to Julio Cesar Cruz, a feeder fund of Algo Capital for the purpose of buying into Julio Cesar Cruz's Algo Capital Trading account.

62.     On October 25, 2022, Defendants caused Plaintiff to assign $670,000.00 Bitcoin in a block chain wallet to Julio Cesar Cruz.

63.     As a proximate result of the aforementioned racketeering acts of Defendants, Plaintiff was damaged in his person and property, to which Plaintiff is entitled to recover treble damages.

64.     In connection with the activities giving rise to this action, the Defendants acted with malice, insult, intent and knowledge, and with a wanton and reckless disregard of the rights of Plaintiff and others.  Furthermore, the acts of Defendants aforementioned were outrageous, atrocious, beyond all bounds of human decency, and utterly intolerable in a civilized society.

65.     During the relevant times, the Enterprise, which consisted of the group of the named Defendants herein, together with others and their association with one another and common goals, were engaged in interstate and/or foreign commerce. In the alternative, ALGO CAPITAL constituted the criminal enterprise.

66.     During the relevant times, in connection with the activities giving rise to this action, Defendants conspired with each other, and with others unknown, to engage in various activities set forth herein and aided and abetted one another in these activities, all as proscribed by 18 U.S.C. §§ 2, and 1962(c) and (d).

67.     During the relevant times, and in furtherance of and for the purpose of executing the scheme and artifice to defraud, Defendants on numerous occasions used and caused to be used mail depositories of the United States Postal Service by both placing and causing to be placed mail-able matter in said depositories and by removing and causing to be removed mail-able matter from said depositories, each such use of the mails in connection with the scheme and artifice to defraud and to obtain money by means of false pretenses, constituting the offense of mail fraud as proscribed and prohibited by 18 U.S.C. § 1341

68.     During the relevant times, and in furtherance of and for the purpose of executing the scheme and artifice to defraud and extort, Defendants, on numerous occasions, used and caused to be used wire communications in interstate and foreign commerce, by both making and causing to be made telephone calls and other wire communications, as proscribed and prohibited by 18 U.S.C. § 1343.

69.     During the relevant times, and in furtherance of and for the purpose of executing the scheme and artifice to defraud and extort money, Defendants caused and induced persons to travel in interstate and foreign commerce, and transported or caused to be transported goods and money of the value in excess of $200,000.00, or more, in interstate commerce, all as proscribed and prohibited by 18 U.S.C. § 2314

70.     During the relevant times, and in furtherance of and for the purpose of executing the scheme and artifice to defraud and extort money, and to obtain money by means of false pretenses, Defendants on numerous occasions engaged in transactions for the payment, receipt or transfer of Ten Thousand ($10,000.00) or more of United States money, and willfully caused a financial institution and/or bank and/or Plaintiff to file a Currency Transaction Report concerning the transaction in violation of 31 U.S.C. § 5313.

71.     During this relevant times, and in furtherance of and for the purpose of executing the scheme and artifice to defraud and extort money, and to obtain money by means of false

pretenses, Defendants concealed the proceeds of their illegal activities by using said proceeds to purchase vehicles, jewelry, real estate, further the business and operations of Defendant ALGO CAPITAL, COLLAZO, HERMAN, CRUZ, JULIAN, K SUNSET, and KAITO, intentionally, willfully and knowingly, all in violation of Title 18 U.S.C. §§ 1956 and 1957.

## COUNT I

## CIVIL RICO

### (Violation of 18 U.S.C. § 1962(c))

72.     The Plaintiff repeats and realleges the allegations contained in paragraph 1 through 71, inclusive, of this Complaint as if fully set forth herein.

73.     Plaintiff is a "person" within the meaning of Title 18 U.S.C. §§ 1961(3) and 1964(c).

74.     The Defendants, ALGO CAPITAL, COLLAZO, HERMAN, CRUZ, JULIAN, K SUNSET, and KAITO, all in their individual capacities, are each a "person" within the meaning of Title 18 U.S.C. §§ 1961(3) and 1964(c).

75.     Section 1962(c) of RICO provides that: It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate directly or indirectly in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

76.     At all relevant times, ALGO CAPITAL, COLLAZO, HERMAN, CRUZ, JULIAN, K SUNSET, and KAITO, together with others known and unknown were associated in fact and constituted an enterprise engaged in the and the activities of which affected, interstate and foreign commerce within the meaning of Title 18 U.S.C. §§ 1961(4) and 1964(c), and did conduct or participate, directly or indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity within the meaning of Title 18 U.S.C. §§ 1961(1)(A), (B), (C), (D), and (E) and 1961(5) and 1962(c), to-wit:

17

## RACKETEERING ACT ONE

### *(Mail & Wire Fraud)*

77**.**     In or about and between January, 2022 and continuing through July, 2023, both dates being approximate and inclusive, within the Southern District of Florida - Miami Division, and elsewhere, the Defendants  ALGO CAPITAL, COLLAZO, HERMAN, CRUZ, JULIAN, K SUNSET, and KAITO, together with members, participants and wrongdoers of the criminal Enterprise, did knowingly, intentionally, and willfully conspire to use and employ manipulative and deceptive devices and contrivances and directly and indirectly *(1)* employ devices, scheme and artifice to defraud Plaintiff; *(2)* to make untrue statements of material facts and omit facts to state facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and *(3)* to engage in acts, practices and courses of conduct which would and did operate as a fraud and deceit upon Plaintiff and the general public, in connection with the fraud and money laundering scheme, and theft of Plaintiff' property and monies, and by use of the instruments of communication interstate commerce and the mails, all in violation of Title 18 U.S.C. §§1341, 1343 and 2.

## OVERT ACTS

78**.**     In furtherance of the conspiracy and to affect the objects thereof, within the Southern District of Florida - Miami Division, and elsewhere, the Defendants ALGO CAPITAL, COLLAZO, HERMAN, CRUZ, JULIAN, K SUNSET, and KAITO, together with members and participants of the criminal Enterprise and others unknown, did commit and cause to be committed the following overt acts, among others:

79**.**     In or about and between January, 2022 and continuing through July, 2023, both dates being approximate and inclusive, Defendants aforenamed, together with others unknown, knowingly and willfully used or caused to be used telephones, wires, mails, and others electronic and communication devices to send or caused to be sent, among numerous others, the following:

18

a.      Multiple instances of Plaintiff sending multiple wire transfer of funds to ALGO CAPITAL;

b.      Multiple instances of ALGO CAPITAL, COLLAZO, HERMAN, CRUZ, JULIAN, K SUNSET, and KAITO, sending or causing to send wire transfers to Plaintiff;

c.      Multiple instances of ALGO CAPITAL, COLLAZO, HERMAN, CRUZ, JULIAN, K SUNSET, and KAITO sending or causing to send emails to Plaintiff relating to the Deals described above;

80.      The aforementioned racketeering/criminal acts were interrelated and were part of a common and continuous pattern. The acts were done in furtherance of the goals of the Defendants aforenamed and the criminal Enterprise.

81.      Defendants, and the criminal Enterprise defrauded Plaintiff of his money and property by Plaintiff reasonably relied to his detriment on the misrepresentations, false and misleading statements and information created or caused to be created and disseminated by Defendants aforenamed.

82.      As a direct and proximate result of the violations of the above cited state and federal criminal statutes, Plaintiff has suffered damages, including, but not limited to, the loss of money, the loss of interest thereon, distress, mental anguish, and non-pecuniary losses, the total amount which is in excess of $670,000.00.

83.      Each of the above acts of mail and wire fraud, though distinct, were related to one another and had the same or similar intent, results, accomplices, victims or methods of commission, to-wit: to defraud Plaintiff of his money and property by fraudulent representations of investing and return on said of investments.

84.      Each of the above related violations of Florida criminal statutes cited above and federal criminal statutes Title 18 U.S.C. §§ 1341 and 1343 was repeated over a substantial period of time, beginning on or about January, 2022 and continuing through July, 2023, poses a threat

of continued criminal activity in the future, and is or was, part of Defendants' regular way of doing business.

85.     Plaintiff was the target of Defendants' scheme to defraud or the Ponzi scheme and reasonably relied to his detriment on the misrepresentations, misleading and false statements made by Defendants ALGO CAPITAL, COLLAZO, HERMAN, CRUZ, JULIAN, K SUNSET, and KAITO in the transactions described above.

86.     As a direct and proximate result of the state and federal criminal violations set forth above, Plaintiff has suffered damages, including but not limited to loss of Plaintiff's monies in the amount of approximately $670,000.00, loss of use of said property, and non-pecuniary losses, the total amount of which is in excess of $670,000.00.

87.     Pursuant to 18 U.S.C. § 1964, Plaintiff is entitled to recover treble damages, their reasonable attorney's fees and the costs of their action.

88.     As a proximate and direct result of the Defendants' racketeering/criminal acts aforementioned, Plaintiff were damaged in their person and property.

## RACKETEERING ACT TWO

### (*Money Laundering - Violation of Title 18 U.S.C. § 1957 & 2*)

89**.**     In or about and between January, 2022 and continuing through July, 2023, both dates being approximate and inclusive, within the Southern District of Florida - Miami Division and elsewhere, the ALGO CAPITAL, COLLAZO, HERMAN, CRUZ, JULIAN, K SUNSET, and KAITO, together with others unknown and members of the criminal Enterprise, knowingly and intentionally engaged in monetary transactions in criminal derived property that was of value greater than $10,000.00 and was derived from specified unlawful activity, to-wit: mail and wire fraud, theft common fraud, fraudulent conveyance or conversion of property, felony theft, by depositing funds into and withdrawing funds out of the financial accounts of Plaintiff, and various federal insured financial institutions, all in violation of Title 18 U.S.C. §§ 1957 and 2.

**OVERT ACTS**

90**.**     In furtherance of the conspiracy and to affect the objects thereof, within the

Southern District of Florida - Miami Division, and elsewhere, the Defendants aforenamed,

together with members and participants of the criminal Enterprise and others unknown, did

commit and cause to be committed the following overt acts, among others:

a.     Multiple instances of mail fraud in violation of Title 18 U.S.C. § 1341 and 2, on

or about and between January, 2022 and continuing through July, 2023, both dates being

approximate and inclusive, regarding the fraudulent taking of Plaintiff's money and property;

b.     Multiple instances of wire fraud in violation of Title 18 U.S.C. §§ 1343 and 2, on

or about and between January, 2022 and continuing through July, 2023, both dates being

approximate and inclusive, regarding the fraudulent taking of Plaintiff's money and property;

c.     Multiple instances of money laundering in violation of Title 18 U.S.C. §§1956,

1957 and 2, on or about and between January, 2022 and continuing through July, 2023, both

dates being approximate and inclusive, regarding the fraudulent taking of Plaintiff's money and

property;

d.     Multiple instances of using Plaintiff's money to purchase personal items,

vehicle(s) and maintaining a lavish lifestyle.

91.     The aforementioned racketeering/criminal acts were interrelated and were part of

a common and continuous pattern. The acts were done in furtherance of the goals of the

Defendants aforenamed and the criminal Enterprise.

92.     Defendants and the criminal Enterprise defrauded Plaintiff of his money and

property by inducing him to invest his money with Defendants, where Plaintiff reasonably relied

to his detriment on the misrepresentations, false and misleading statements and information

created or caused to be created and disseminated by Defendants aforenamed.

93.     As a direct and proximate result of the violations of the above cited state and

federal criminal statutes, Plaintiff has suffered damages, including, but not limited to, loss of his money and property in excess of $670,000.00, the loss of interest thereon.

94.     Pursuant to 18 U.S.C. 1964, Plaintiff is entitled to recover treble damages, their reasonable attorney's fees and the costs of their action.

95.     As a proximate and direct result of the Defendants aforenamed racketeering/criminal acts aforementioned, Plaintiff was damaged in their person and property.

## RACKETEERING ACT THREE

### *(Money Laundering - Violation of Title 18 U.S.C. § 1956 and 2)*

96.     In or about and between January, 2022 and continuing through July, 2023, both dates being approximate and inclusive, within the Southern District of Florida - Miami Division and elsewhere, the Defendants  ALGO CAPITAL, COLLAZO, HERMAN, CRUZ, JULIAN, K SUNSET, and KAITO, together with members of the Enterprise and others unknown, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, did knowingly, and intentionally conspire to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce which in fact involved the proceeds of specified unlawful activity, to-wit: mail and wire fraud, theft common fraud, felony theft, fraudulent conveyance or conversion of property, *(1)* with the intent to promote the carrying on of the specified unlawful activity and *(2)* knowing that the transactions were designed in whole or part to conceal and disguise the nature, location, source, ownership, and control of such proceeds, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i), all in violation of Title 18, United States Code, Section 1956(h) and 2.

## OVERT ACTS

97.     In furtherance of the conspiracy and to affect the objects thereof, within the Southern District of Florida - Miami Division, and elsewhere, the Defendants aforenamed, together with members and participants of the criminal Enterprise and others unknown, did

commit and cause to be committed the following overt acts, among others:

     a.    Multiple instances of mail fraud in violation of Title 18 U.S.C. § 1341 and 2, on or about and between January, 2022 and continuing through July, 2023, both dates being approximate and inclusive, regarding the fraudulent taking of Plaintiff's money and property;

     b.    Multiple instances of wire fraud in violation of Title 18 U.S.C. §§ 1343 and 2, on or about and between January, 2022 and continuing through July, 2023, both dates being approximate and inclusive, regarding the fraudulent taking of Plaintiff's money and property;

     c.    Multiple instances of money laundering in violation of Title 18 U.S.C. §§1956, 1957 and 2, on or about and between January, 2022 and continuing through July, 2023, both dates being approximate and inclusive, regarding the fraudulent taking of Plaintiff's money and property;

     d.    Multiple instances of using Plaintiff's money to purchase personal items, vehicle(s) and maintaining a lavish lifestyle.

98.    The aforementioned racketeering/criminal acts were interrelated and were part of a common and continuous pattern. The acts were done in furtherance of the overall common goals of the Defendants aforenamed and the criminal Enterprise.

99.    Defendants and the criminal Enterprise defrauded Plaintiff of his money and property by false claims, misrepresentations. Plaintiff reasonably relied to his detriment on the misrepresentations, false and misleading statements and information created or caused to be created and disseminated by Defendants aforenamed.

100.    As a direct and proximate result of the violations of the above cited state and federal criminal statutes, Plaintiff has suffered damages, including, but not limited to, Plaintiff's money in excess of $670,000.00, the loss of interest thereon.

101.    Pursuant to 18 U.S.C. § 1964, Plaintiff is entitled to recover treble damages, their reasonable attorney's fees and the costs of their action.

102**.**     As a proximate and direct result of the Defendants aforenamed racketeering/criminal acts aforementioned, Plaintiff was damaged in their person and property.

103.     By reason of violation of Title 18 U.S.C. § 1962(d) committed by the Defendants aforenamed, the Plaintiff was injured and sustained a loss in excess of $670,000.00, within the meaning of 18 U.S.C. § 1964(c).

104.     The aforementioned racketeering acts were interrelated, and were part of a common and continuous pattern.

105.     The Enterprise has or is likely to commit similar racketeering acts against others individuals who are similarly situated with Plaintiff, as it already has with Plaintiff.  The above-described acts of wire fraud, mail fraud, money laundering and violation of the Travel Act thus constitute a pattern of racketeering activity as defined in 18 U.S.C. § 1961(5).

106.     By reason of the violation of 18 U.S.C § 1962(c) committed by the aforenamed Defendants and as a proximate result of the Defendants' participation in the operation and management of the Enterprise through a pattern of racketeering activity in violation of § 1962(c), Plaintiff has suffered a financial loss and was otherwise injured in an amount in excess of $670,000.00 within the meaning of 18 U.S.C. § 1962(c).

## COUNT II

### (Violation of 18 U.S.C. § 1962(d) by

### Conspiracy to Violate 18 U.S.C. § 1962(c))

107.     The Plaintiff repeats and realleges paragraphs 1 through 71, inclusive as if fully set forth herein of this Complaint.

108.     Section 1962(c) of RICO provides that: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (1), (b), (c) of this section."

109.     From at least January, 2022 and continuing through July, 2023, the Defendants, ALGO CAPITAL, COLLAZO, HERMAN, CRUZ, JULIAN, K SUNSET, and KAITO, in

violation of 18 U.S.C. § 1962(d), unlawfully and willfully combined, conspired, confederated and agreed with others participants in the Enterprise named and not named herein, to violate 18 U.S.C. § 1962(c), and conducted and participated, directly and indirectly, in the conduct of the affairs of the Enterprise as alleged herein.

110.    In furtherance of the above-described conspiracy, and to affect its objectives, the participants in the Enterprise committed and agreed to commit overt acts or have others commit overt acts on their behalf in the Southern District of Florida - Miami Division and elsewhere.

111.    The Defendants ALGO CAPITAL, COLLAZO, HERMAN, CRUZ, JULIAN, K SUNSET, and KAITO, and participants did conspire to conduct or participate, directly or indirectly, in the conduct of such Enterprise's affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) (A), (B), (D) & (E) and 1961(5) and 1962(c), to-wit:

(a)    Multiple instances of mail fraud in violation of 18 U.S.C. § 1341 and 1342;

(b)    Multiple instances of wire fraud in violation of 18 U.S.C. § 1343;

(d)    Multiple instances of interstate transportation of persons and of stolen property in violation of 18 U.S.C. § 2314;

(e)    Multiple instances of failure to file Currency Transaction reports in violation of 31 U.S.C. § 5313;

(k)    Multiple instances of money laundering in violation of Title 18 U.S.C. §§ 1956 and 1957.

112.    By reason of violation of Title 18 U.S.C. § 1962(d) committed by the Defendants aforenamed, the Plaintiff was injured and sustained a loss in excess of $670,000.00, within the meaning of 18 U.S.C. § 1964(c).

## RACKETEERING ACT ONE

### *(Mail & Wire Fraud)*

113**.**     In or about and between January, 2022 and continuing through July, 2023, both

dates being approximate and inclusive, within the Southern District of Florida - Miami Division,

and elsewhere, the Defendants  ALGO CAPITAL, COLLAZO, HERMAN, CRUZ, JULIAN, K

SUNSET, and KAITO, together with members, participants and wrongdoers of the criminal

Enterprise, did knowingly, intentionally, and willfully conspire to use and employ manipulative

and deceptive devices and contrivances and directly and indirectly *(1)* employ devices, scheme

and artifice to defraud Plaintiff; *(2)* to make untrue statements of material facts and omit facts to

state facts necessary in order to make the statements made, in light of the circumstances under

which they were made, not misleading; and *(3)* to engage in acts, practices and courses of

conduct which would and did operate as a fraud and deceit upon Plaintiff and the general public,

in connection with the fraud and money laundering scheme, and theft of Plaintiff' property and

monies, and by use of the instruments of communication interstate commerce and the mails, all

in violation of Title 18 U.S.C. §§1341, 1343 and 2.

## OVERT ACTS

114**.**     In furtherance of the conspiracy and to affect the objects thereof, within the

Southern District of Florida - Miami Division, and elsewhere, the Defendants ALGO CAPITAL,

COLLAZO, HERMAN, CRUZ, JULIAN, K SUNSET, and KAITO, together with members and

participants of the criminal Enterprise and others unknown, did commit and cause to be

committed the following overt acts, among others:

115.     In or about and between January, 2022 and continuing through July, 2023, both

dates being approximate and inclusive, Defendants aforenamed, together with others unknown,

knowingly and willfully used or caused to be used telephones, wires, mails, and others electronic

and communication devices to send or caused to be sent, among numerous others, the following:

a.      Multiple instances of Plaintiff sending multiple wire transfer of funds to ALGO CAPITAL, COLLAZO, HERMAN, CRUZ, K SUNSET, and KAITO;

b.      Multiple instances of ALGO CAPITAL, COLLAZO, HERMAN, CRUZ, K SUNSET, and KAITO sending wire transfers to Plaintiff;

c.      Multiple instances of ALGO CAPITAL, LLC, ROBERT D COLLAZO, JR, JULIO CESAR CRUZ, and JUAN HERMAN sending emails to Plaintiff relating to the Deals described above;

116.    The aforementioned racketeering/criminal acts were interrelated and were part of a common and continuous pattern. The acts were done in furtherance of the goals of the Defendants aforenamed and the criminal Enterprise.

117.    Defendants, and the criminal Enterprise defrauded Plaintiff of his money and property by Plaintiff reasonably relied to his detriment on the misrepresentations, false and misleading statements and information created or caused to be created and disseminated by Defendants aforenamed.

118.    As a direct and proximate result of the violations of the above cited state and federal criminal statutes, Plaintiff has suffered damages, including, but not limited to, the loss of money, the loss of interest thereon, distress, mental anguish, and non-pecuniary losses, the total amount which is in excess of $670,000.00.

119.    Each of the above acts of mail and wire fraud, though distinct, were related to one another and had the same or similar intent, results, accomplices, victims or methods of commission, to-wit: to defraud Plaintiff of his money and property by fraudulent representations of investing and return on said of investments.

120.    Each of the above related violations of Florida criminal statutes cited above and federal criminal statutes Title 18 U.S.C. §§ 1341 and 1343 was repeated over a substantial period of time, beginning on or about January, 2022 and continuing through July, 2023, poses a threat

of continued criminal activity in the future, and is or was, part of Defendants' regular way of doing business.

121.     Plaintiff was the target of Defendants' scheme to defraud or the Ponzi scheme and reasonably relied to his detriment on the misrepresentations, misleading and false statements made by Defendants ALGO CAPITAL, COLLAZO, HERMAN, CRUZ, K SUNSET, and KAITO by causing Plaintiff to invest his money in the Deals described above.

122.     As a direct and proximate result of the state and federal criminal violations set forth above, Plaintiff has suffered damages, including but not limited to loss of Plaintiff's monies in the amount of approximately $670,000.00, loss of use of said property, and non-pecuniary losses, the total amount of which is in excess of $670,000.00.

123.     Pursuant to 18 U.S.C. § 1964, Plaintiff is entitled to recover treble damages, their reasonable attorney's fees and the costs of their action.

124.     As a proximate and direct result of the Defendants' racketeering/criminal acts aforementioned, Plaintiff were damaged in their person and property.

## RACKETEERING ACT TWO

### (*Money Laundering - Violation of Title 18 U.S.C. § 1957 & 2*)

125.     In or about and between January, 2022 and continuing through July, 2023, both dates being approximate and inclusive, within the Southern District of Florida - Miami Division and elsewhere, the ALGO CAPITAL, COLLAZO, HERMAN, CRUZ, JULIAN, K SUNSET, and KAITO, together with others unknown and members of the criminal Enterprise, knowingly and intentionally engaged in monetary transactions in criminal derived property that was of value greater than $10,000.00 and was derived from specified unlawful activity, to-wit: mail and wire fraud, theft common fraud, fraudulent conveyance or conversion of property, felony theft, by depositing funds into and withdrawing funds out of the financial accounts of Plaintiff, and various federal insured financial institutions, all in violation of Title 18 U.S.C. §§ 1957 and 2.

## OVERT ACTS

126**.**    In furtherance of the conspiracy and to affect the objects thereof, within the Southern District of Florida - Miami Division, and elsewhere, the Defendants aforenamed, together with members and participants of the criminal Enterprise and others unknown, did commit and cause to be committed the following overt acts, among others:

a.    Multiple instances of mail fraud in violation of Title 18 U.S.C. § 1341 and 2, on or about and between January, 2022 and continuing through July, 2023, both dates being approximate and inclusive, regarding the fraudulent taking of Plaintiff's money and property;

b.    Multiple instances of wire fraud in violation of Title 18 U.S.C. §§ 1343 and 2, on or about and between January, 2022 and continuing through July, 2023, both dates being approximate and inclusive, regarding the fraudulent taking of Plaintiff's money and property;

c.    Multiple instances of money laundering in violation of Title 18 U.S.C. §§1956, 1957 and 2, on or about and between January, 2022 and continuing through July, 2023, both dates being approximate and inclusive, regarding the fraudulent taking of Plaintiff's money and property;

d.    Multiple instances of using Plaintiff's money to purchase personal items, vehicle(s) and maintaining a lavish lifestyle.

127.    The aforementioned racketeering/criminal acts were interrelated and were part of a common and continuous pattern. The acts were done in furtherance of the goals of the Defendants aforenamed and the criminal Enterprise.

128.    Defendants and the criminal Enterprise defrauded Plaintiff of his money and property by inducing him to invest his money and /or believing his funds were safe and a payment schedule existed by WBL to pay Plaintiff, with Defendants, where Plaintiff reasonably

relied to his detriment on the misrepresentations, false and misleading statements and information created or caused to be created and disseminated by Defendants aforenamed.

129.    As a direct and proximate result of the violations of the above cited state and federal criminal statutes, Plaintiff has suffered damages, including, but not limited to, loss of his money and property in excess of $670,000.00, the loss of interest thereon.

130.    Pursuant to 18 U.S.C. 1964, Plaintiff is entitled to recover treble damages, their reasonable attorney's fees and the costs of their action.

131.    As a proximate and direct result of the Defendants aforenamed racketeering/criminal acts aforementioned, Plaintiff was damaged in their person and property.

## RACKETEERING ACT THREE

### *(Money Laundering - Violation of Title 18 U.S.C. § 1956 and 2)*

132.    In or about and between January, 2022 and continuing through July, 2023, both dates being approximate and inclusive, within the Southern District of Florida - Miami Division and elsewhere, the Defendants  ALGO CAPITAL, COLLAZO, HERMAN, CRUZ, JULIAN, K SUNSET, and KAITO, together with members of the Enterprise and others unknown, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, did knowingly, and intentionally conspire to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce which in fact involved the proceeds of specified unlawful activity, to-wit: mail and wire fraud, theft common fraud, felony theft, fraudulent conveyance or conversion of property, *(1)* with the intent to promote the carrying on of the specified unlawful activity and *(2)* knowing that the transactions were designed in whole or part to conceal and disguise the nature, location, source, ownership, and control of such proceeds, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i), all in violation of Title 18, United States Code, Section 1956(h) and 2.

## OVERT ACTS

133.     In furtherance of the conspiracy and to affect the objects thereof, within the

Southern District of Florida - Miami Division, and elsewhere, the Defendants aforenamed,

together with members and participants of the criminal Enterprise and others unknown, did

commit and cause to be committed the following overt acts, among others:

a.     Multiple instances of mail fraud in violation of Title 18 U.S.C. § 1341 and 2, on

or about and between January, 2022 and continuing through July, 2023, both dates being

approximate and inclusive, regarding the fraudulent taking of Plaintiff's money and property;

b.     Multiple instances of wire fraud in violation of Title 18 U.S.C. §§ 1343 and 2, on

or about and between January, 2022 and continuing through July, 2023, both dates being

approximate and inclusive, regarding the fraudulent taking of Plaintiff's money and property;

c.     Multiple instances of money laundering in violation of Title 18 U.S.C. §§1956,

1957 and 2, on or about and between January, 2022 and continuing through July, 2023, both

dates being approximate and inclusive, regarding the fraudulent taking of Plaintiff's money and

property;

d.     Multiple instances of using Plaintiff's money to purchase personal items,

vehicle(s) and maintaining a lavish lifestyle.

134.     The aforementioned racketeering/criminal acts were interrelated and were part of

a common and continuous pattern. The acts were done in furtherance of the overall common

goals of the Defendants aforenamed and the criminal Enterprise.

135.     Defendants and the criminal Enterprise defrauded Plaintiff of his money and

property by false claims, misrepresentations. Plaintiff reasonably relied to his detriment on the

misrepresentations, false and misleading statements and information created or caused to be

created and disseminated by Defendants   aforenamed.

136.     As a direct and proximate result of the violations of the above cited state and

federal criminal statutes, Plaintiff has suffered damages, including, but not limited to, Plaintiff's

money in excess of $670,000.00, the loss of interest thereon.

137.   Pursuant to 18 U.S.C. § 1964, Plaintiff is entitled to recover treble damages, their reasonable attorney's fees and the costs of their action.

138**.**   As a proximate and direct result of the Defendants aforenamed racketeering/criminal acts aforementioned, Plaintiff was damaged in their person and property.

## COUNT III

## (Fraud in the Inducement)

139.   Plaintiffs repeats and re-alleges the allegations contained in paragraphs 1 through 66, inclusive, of this complaint as if fully set forth herein.

140.    In or about 2002, Defendants ALGO CAPITAL, COLLAZO, HERMAN, CRUZ, JULIAN, K SUNSET, and KAITO, represented that ALGO CAPITAL developed an Algorithmic trading platform software to dynamically identify profitable opportunities and place the trades in order to generate profits at a speed and frequency that is impossible to match by a human trader.

141.   Further, Defendants represented by way of text messages, images of reports of the activities of the Algorithmic trading platform software where the reports reflected enormous profits on each and every trade by the Algorithmic trading platform software

142.   Based on Defendants' representations, warranties, and statements that the Algorithmic trading platform software was unique, viable and had proven results over an extended period of time, Plaintiff invested his money in the amount of $670,000.00.

143.   Thereafter, Defendants convinced Plaintiff's initial investment of $670,000.00 was growing exponentially in the account held by ALGO CAPITAL, the truth was Defendants absconded with Plaintiff's investment.

144.   Defendants agreed to owe a fiduciary duty to Plaintiff in caring for and holding Plaintiff's in the account held and managed by ALGO CAPITAL.

145.    In or about and between January 2022 and June 2023, when Plaintiff requested his investment and all profits generated from his investment, Defendants created a false report showing that the Algorithmic trading platform software had engaged in trades of gold and cryptocurrency which resulted in a total loss of Plaintiff's investment of $670,000.00.

146.    Defendants falsely claimed that the Algorithmic trading platform software existed, was unique and incredibly successful in generating profits for individuals like Plaintiff. Each one of these claims, representations and statements by Defendants was patently false and specifically designed to fraudulently induce Plaintiff into investing his $670,000.00 in an account held and managed by ALGO CAPITAL.

147.    Plaintiff reasonably relief on each of the representations and statements made by the Defendants detailed in the preceding paragraphs of this complaint.

148.    The statements and representations made by Defendants were false and misleading at the time they were made to Plaintiff because Defendants had no created an Algorithmic trading platform software and there were no profits being generated from Plaintiff's investment.

149.    Defendants knew the statements and representations described above were false and misleading at the time they were made to Plaintiff. Said statements and representations were made to induce Plaintiff to transfer Plaintiff's $670,000.00 for the account held and managed by ALGO CAPITAL, to the detriment of Plaintiff.

150.    Plaintiff reasonably relied on each and every above-described representation and statement made by Defendants, to Plaintiff's detriment.

151.    But for the false and misleading statements and representations made by Defendants, Plaintiff would not have invested his $670,000.00 for an account held and managed by ALGO CAPITAL.

152.    As a proximate and direct result of Defendants' acts of fraud, and executing the scheme to defraud Plaintiff in his property, Plaintiff has been damaged in an amount in excess of $670,000.00.

153.    Further, Defendants committed such acts maliciously, oppressively and fraudulently, with ill will and an evil intent to damage Plaintiff. Plaintiff, therefore reserves the right to seek an award of exemplary and punitive damages in an amount proven at trial.

154.    Plaintiff is entitled to judgment in favor of him and against Defendants on this Count III for money damages, costs and interest and requests other and further relief this Court deems proper and just.

## COUNT IV.

### (Common Law Fraud)

155.    Plaintiff incorporates herein by reference and re-alleges each and every allegation contained in the preceding paragraphs 1 through 66, inclusive of this Complaint as if fully set forth herein.

156.    The Defendants ALGO CAPITAL, COLLAZO, HERMAN, CRUZ, JULIAN, K SUNSET, and KAITO made a false representation of a material existing fact, or a representation as to a material existing fact made with a reckless disregard of its truth or falsity; or concealed a material existing fact, that in equity and good conscience should have been disclosed.

157.    Plaintiff justifiably relied upon Defendants' misrepresentation and was ignorant of the falsity of the representation or of the existence of the fact concealed. The representation or concealment made or practiced by the Defendants was done so with the intention that it shall be acted upon.

158.    Plaintiff's action on the misrepresentations and/or concealment of a materially existing fact by Defendant resulted in damages to Plaintiffs in an amount in excess of $670,000.00.

159.    Further, Defendant committed such acts maliciously, oppressively and fraudulently, with ill will and an evil intent to damage Plaintiff, therefore reserves the right to seek an award of exemplary and punitive damages in an amount proven at trial.

160.    Plaintiff are entitled to judgment in favor of it and against Defendants on this Count IV for money damages, costs and interest and requests other and further relief this Court deems proper and just.

## COUNT V.

## BREACH OF CONTRACT

161.    Plaintiff incorporates herein by reference and re-alleges each and every allegation contained in the preceding paragraphs 1 through 66, inclusive of this Complaint as if fully set forth herein.

162.    Defendants CRUZ and KAITO entered into a written agreement with Plaintiff wherein Defendants agreed to accept the asset swap of Plaintiff's money in the amount of $670,000.00 in BTC held and controlled in Julio Cruz crypto wallet for the trading account held by ALGO CAPITAL (account no. 6180616). Further, plaintiff reinvested into the platform the same way he invested the first time; via Julio Cruz, considering an investment directly with algo was never permitted; as Julio Cruz was the feeder fund.

163.    Defendants never used Plaintiff's money in the Algorithmic trading platform software as promised and represented to Plaintiff.

164.    Defendants' acts described in the preceding paragraphs of this complaint constitute a breach of the written agreement (asset swap agreement) between the parties, resulting in damage/injury to Plaintiff.

165.    Plaintiff is entitled to judgment against Defendants in the amount of $670,000.00, plus costs of this litigation, prejudgment interest and post-judgment interest.

## COUNT VI.

## UNJUST ENRICHMENT

166.    Plaintiff incorporates herein by reference and re-alleges each and every allegation contained in the preceding paragraphs 1 through 66, inclusive of this Complaint as if fully set forth herein.

167.    This is an action brought Plaintiff against Defendants ALGO CAPITAL, COLLAZO, HERMAN, CRUZ, JULIAN, K SUNSET, and KAITO pursuant to common law for unjust enrichment.

168.    As a result of the conduct described herein, Defendants were given $670,000.00 to by Plaintiff to generate profits from the Algorithmic trading platform software created and developed and used by Defendants. Defendants kept Plaintiff's money and refused to return Plaintiff's money to which they were not entitled to retain, but rather turnover and give to Plaintiff.

169.    As a consequence of the acts set forth above, Defendants was unjustly enriched at the expense of Plaintiff in an amount in excess of $670,000.00. In equity and good conscience, Defendant should not be permitted to retain monies which were rightfully Plaintiff's.

## PRAYER

Accordingly, Plaintiff prays that Defendants ALGO CAPITAL, COLLAZO, HERMAN, CRUZ, JULIAN, K SUNSET, and KAITO be required to answer to this complaint, that this action be set for trial at an early date, and that upon the pleadings, evidence presented, and facts determined by the jury, the Court grant judgment to Plaintiff including the following relief.

A.    Injunctive orders, both mandatory and prohibitory (1) requiring Defendants to turnover any and all of Plaintiff's property in Defendants' possession or control or held by third parties on their behalf, and (2) restraining the Defendants, their agents, attorneys and persons

acting in concert with them from any future act which directly or indirectly violates or may tend to violate the property rights of Plaintiff.

B.     An award of compensatory damages in accordance with the findings of the jury, together with prejudgment and post-judgment interest as allowed by law, recoverable jointly and severally from all Defendants.

C.     An award of punitive damages in the full amount found by the jury against each of the individual Defendants.

D.     Plaintiff's costs of action, including a reasonable attorney's fee and all reasonable and necessary expenses of litigation, as provided by law, together with post-judgment interest.

E.     All other and further relief to which Plaintiff may show himself entitled to at law or in equity.

## **REQUEST FOR JURY**

In the exercise of his rights under the Seventh Amendment to the United States Constitution, the applicable statutes and rules of court, Plaintiff respectfully requests that all issues of fact in his several claims for relief by decided by a jury.

November 16, 2023
Miami, Florida.

Respectfully submitted,

*//ss// Andre Rouviere*
Andre Rouviere

**LAW OFFICES OF ANDRE A. ROUVIERE**
4070 Laguna Street
Coral Gables, Florida 33146
Tel: (305)774-7000
Fax:(305)946-6121
*Attorney for Plaintiff*

## <u>VERIFICATION</u>

I, ARMANDO RUBIO, hereby verify and affirm that the foregoing facts and claims are true and correct, done under penalties of perjury on this 16th day of November 2023.

_____
ARMANDO RUBIO